IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | | |
|---|---|---|
| DIGITAL ALLY, INC. | ) | |
| 9705 Loiret Boulevard | ) | |
| Lenexa, KS 66219 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| UTILITY ASSOCIATES, INC. | ) | |
| 1484 Brockett Rd. | ) | |
| Tucker, GA 30084, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Eric McKee | ) | |
| 269 Sunrise Circle | ) | |
| Greenwood, IN 46142-9194 | ) | |
| | ) | |
| or | ) | |
| | ) | |
| 1438 Harrison Dr | ) | |
| Greenwood, IN 46143-8432 | ) | |
| | ) | |
| Defendants. | ) | |

**VERIFIED COMPLAINT FOR INJUNCTION, TORTIOUS INTERFERENCE, BUSINESS LIBEL, BREACH OF CONTRACT,  VIOLATION OF THE KANSAS UNIFORM TRADE SECRETS ACT, CONVERSION AND DAMAGES**

Plaintiff Digital Ally, Inc., for its claims for relief against defendants Utility Associates, Inc. and Eric McKee, alleges and states as follows:

**PARTIES, JURISDICTION AND VENUE**

1.     Digital Ally, Inc. ("Digital") is a corporation organized and existing under the laws of the State of Nevada, with its principal place of business in Johnson County, Kansas.

2.     Defendant Utility Associates, Inc. ("Utility") is a corporation organized and existing under the laws of the state of Delaware having its place of business at 1484 Brockett Road, Tucker, GA 30084.

3.     Eric McKee ("McKee") is an individual citizen and resident of the state of Indiana.

4.     This is a civil action between citizens of different states, wherein the amount in controversy exceeds the sum of $100,000 exclusive of interest and costs and, accordingly, is an action over which this Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

5.     Utility and McKee are each subject to extraterritorial service of process and to the exercise of in personam jurisdiction herein for the reasons that, *inter alia:*

   a.     Utility and McKee have each transacted business in the state of Kansas within the meaning of K.S.A. § 60-308(b)(A);

   b.     Utility has committed tortious acts in this state within the meaning of K.S.A. § 60-308(b)(B) for the reason that it has interfered tortiously with Digital's contracts, agreements and understandings with McKee and has otherwise interfered tortiously with contracts, agreements and understandings between Digital and the purchasers of goods and products manufactured and sold by Digital or with Digital's reasonable business expectancies with respect to such purchasers, the effect of which interference has been felt by Digital in Kansas;

   c.     McKee has committed tortious acts in this state within the meaning of K.S.A. § 60-308(b)(B) for the reason that he has interfered tortiously with Digital's contracts, agreements and understandings and has otherwise interfered tortiously with contracts, agreements and understandings between Digital and the purchasers of goods and products manufactured and sold by Digital or with Digital's reasonable business expectancies with respect to such purchasers, the effect of which interference has been felt by Digital in Kansas;

   d.     McKee has committed tortious acts in this state within the meaning of K.S.A. § 60-308(b)(B) for the reason that he has used, disclosed, misappropriated and/or converted trade secrets, proprietary and

2

confidential information and other intellectual property belonging to Digital, the impact of which was felt by Digital in the state of Kansas;

e.      Utility has committed tortious acts in this state within the meaning of K.S.A. § 60-308(b)(B) for the reason that it has used, disclosed, misappropriated and/or converted trade secrets, proprietary and confidential information and other intellectual property belonging to Digital, the impact of which was felt by Digital in the state of Kansas;

f.      McKee has entered into express contracts with Digital in the state of Kansas which contracts were to be performed either in whole or in part by either party in the state of Kansas within the meaning of K.S.A. § 60-308(b)(D);

g.      Utility has caused injury to Digital in this state arising out of acts or omissions outside of this state at a time when Utility was engaged in solicitation or service activities in this state and/or when products, materials or things processed, serviced or manufactured by it were used or consumed in this state in the ordinary course of trade or use within the meaning of K.S.A. § 60-308(b)(G);

h.      Utility and/or McKee have each had contacts with the state of Kansas of a kind and character sufficient to support in personam jurisdiction over them consistent with the Constitution of the United States and the Constitution of the state of Kansas within the meaning of K.S.A. § 60-308(b)(L); and

i.      Utility and/or McKee have each engaged in substantial, continuous and systematic contact with the state of Kansas of a kind and character sufficient to support the exercise of in personam jurisdiction over them consistent with the Constitution of the United States and the Constitution of the state of Kansas.

## ALLEGATIONS COMMON TO ALL COUNTS

**A.      Overview**

6.      Digital is a so-called "public" company, the common stock of which is registered with the Securities & Exchange Commission ("SEC") and traded publicly on one or more national exchanges.

7.      Digital is engaged in the business of designing, developing, manufacturing and selling digital recording devices and related equipment, the principal consumer of which are law

enforcement agencies, branches of the Armed Forces of the United States and other public as well as private security organizations.

8.    Utility is or claims to be a manufacturer and seller of "web browser-based video management software" and, in addition, claims to manufacture and sell "video recording systems" for use in motor vehicles and to be a "direct competitor" of Digital with respect to one or more categories of video recording equipment offered for sale to law enforcement agencies, among other purchasers.

9.    In addition, Utility is engaged in the business of purchasing unused patents, the ideas, innovations and/or inventions embodied in which have not been or cannot be reduced to any practical application, and then enforcing or threatening to enforce the same in exchange for remuneration.

10.    Among the unused patents which Utility owns and has threatened to enforce is Patent No. 6,831,556 issued to one Boykin on December 14, 2004 ("'556 Patent").

11.    McKee is an employee of Utility and a former employee of Digital.

**B.    Utility's Acts Regarding the '556 Patent and Digital's Customers**

12.    The state of Nebraska has been a Digital customer since April, 2010 during which time, the state of Nebraska has purchased a number of Digital's DVM-75 advanced digital video systems, which it has deployed with law enforcement agencies throughout the state.

13.    Similarly, the state of New York is a long time Digital customer and, over the years, has purchased and deployed with its law enforcement personnel nearly every model of advanced digital video systems to be found in Digital's Law Enforcement Solutions line of products.

4

14.     On or about October 14, 2013, Utility directed separate letters to the states of Nebraska and New York, with the actual knowledge and understanding that each was a Digital customer.

15.     A copy of Utility's October 14, 2013 letter to Ms. Julie Hopp, the "buyer" at the state of Nebraska, who had purchased and/or approved the purchase of Digital's video surveillance systems by that state, is attached to this Complaint as **EXHIBIT 1** and by reference incorporated herein.

16.     A copy of an email dated October 18, 2013, containing excerpts of the substantially identical letter which Utility sent to the state of New York, is attached to this Complaint as **EXHIBIT 2** and by reference incorporated herein.

17.     In those written communications, Utility informed the states of Nebraska and New York, of the following:

   a.     Utility was the owner and holder of the **"'556 Patent"**;

   b.     Such patent had **"enjoyed a high degree of commercial success, and a major mobile video surveillance system provider has already paid for a license under the … patent"**;

   c.     As the states of Nebraska and/or New York considered **"the purchase of mobile video surveillance systems for … public safety operations, (they) should consider the consequences of purchasing such mobile video surveillance systems from third parties that are not licensed under the ('556 Patent)"**;

   d.     Should those states purchase **"mobile video surveillance systems that are covered by the claims of the … patent and that are not licensed under the … patent"** they would be **"liable for patent infringement as a result of (their) … use of such infringing … systems"**;

   e.     Such **"infringement may subject"** the states of Nebraska/New York **"to an injunction against further use of the infringing mobile surveillance systems and may result in an award of damages not less than a reasonable royalty, treble damages, attorneys' fees and prejudgment interest"**;

5

f.     Utility **"is entitled to collect damages directly from"** each of the states, leaving the states themselves **"whatever value any indemnity from the seller of the infringing mobile video surveillance systems might be worth if the seller does not have substantial financial resources"**; and

g.     In **"order to avoid the adverse consequences that may result from the purchase of infringing and unlicensed mobile surveillance systems,"** the states of Nebraska and New York **"should consider purchasing … mobile video surveillance system needs from Utility."**

18.     Upon their receipt of these letters, representatives both from the state of Nebraska and the state of New York contacted Digital seeking information regarding Utility's threat of litigation and asking, in particular, whether the products which they had purchased from Digital indeed infringed upon the '556 Patent.

19.     In response to Utility's threats regarding patent infringement, Digital sued Utility in the U.S. District Court for the District of Kansas, titled <u>Digital Ally, Inc. v. Utility Associates, Inc.</u>, Case No. 13-cv-2550 SAC/KGS (the "DJ Case"), seeking declaratory relief to effect that Digital's videographic products did not, in fact, infringe upon the '556 Patent, thus mitigating the threat of litigation which Utility had directed to the state of Nebraska, the state of New York, and to Digital's other current and prospective customers.

20.     Utility was duly served with process but moved to dismiss the DJ Case under Fed. R. Civ. P. 12(b)(2), on grounds that the District Court lacked personal jurisdiction over it.  In the context of that motion, Utility asserted/admitted that, in truth, it did not accuse Digital of patent infringement or claim that any Digital products infringed on the '556 Patent.  Specifically, in its **Motion to Dismiss and Brief in Support** (filed January 23, 2014 in the DJ Case as **Doc. 6**) and in its **Reply in Support of its Motion to Dismiss** (filed March 6, 2014 in the DJ Case as **Doc. 23**), Utility made each and all of the following admissions:

a.     The letters which it had sent to the states of Nebraska and New York were sent merely as **"informational and non-threatening sales letters to potential Utility Customers (Doc. 6, p. 2))"**;

b.    Utility **"did not accuse the Digital Ally (or any of its customers) of infringing on any claim of the '556 Patent"** (*Id.*, p. 2);

c.    **"Digital Ally has not received a threat of patent litigation – two of its customers received an offer to purchase a competing product that Utility believes is protected by the '556 Patent,"** (*Id.*, p. 11);

d.    Those letters explained **"that purchasing mobile video surveillance systems that are not licensed may lead to liability for patent infringement … . [n]o particular products were identified and Digital Ally was never mentioned."** (*Id.*, pp. 12-13);

e.    "Utility's letter[s] did not identify Digital Ally's infringing 'product line'";

f.    That was **"not surprising because the letter was a sales pitch for Utility *products*, not a *patent* demand letter."** (*Id.*, p. 13); and

g.    **"Utility has made no infringement assertions against Digital Ally or any of Digital Ally's products"** (Doc. 23, p. 6).

21.    On April 9, 2014, the U.S. District Court entered its Opinion and Order dismissing the DJ Case, finding that the Court lacked personal jurisdiction over Utility (Docs. 26 and 27 in the DJ Case).  In so doing, the U.S. District Court made no factual findings and stated no conclusions of law regarding the validity of or any infringement on the '556 Patent.  *Id.*

22.    On April 15, 2014, Utility issued and published a "press release", a copy of which is attached to this Complaint as **EXHIBIT 3** and by reference incorporated herein:

a.    **"[s]ince [Utility's] patents are presumed to be valid, we would have thought that Digital Ally would have wanted to determine if they were infringing on a patent … [r]ather than the patent owner trying to run down every possible infringer (Utility) would think that a manufacturer would want to take steps to avoid infringement or obtain a valid license to a patent …"**;

b.    Utility **"continue[d] to believe that the patent is valid"** and **"a reputable Fortune 500 manufacturer and marketer of legal evidence video camera systems in 2009 paid a seven-figure sum to purchase a license to the … '556 Patent"** which Utility believed **"shows others believed the patent is valid too"**;

c.    **"[p]erhaps Digital Ally should have purchased the … '556 Patent before we purchased it for a considerable sum, but they did not,**

4815950_1

**instead Digital Ally sued our company. It is important to note that we did not countersue. Many factors go into such a designation. Consideration of investing legal fees and management time in a lawsuit always has [sic] to be balanced with the likelihood of actually collecting damages if the lawsuit is successful"**;

d.  **"Digital Ally in their 2013 earnings conference held on March 27, 2014 stated they had their worst 4th quarter in years"**;

e.  It **"is a public record from SEC filings that Digital Ally had an operating loss of $1,573,958 in fourth quarter 2013 and a Balance Sheet 'Cash and Cash Equivalent' account of $454,978 on December 31, 2013"**;

f.  Accordingly, Utility was **"concerned that collecting on a judgment resulting from a potential successful countersuit might be in question"**; and

g.  Such statements constituted a false, fraudulent, and misleading statement regarding Digital's financial condition in that, *inter alia*, such release omitted any mention of the fact that Digital had raised fully $2,000,000,000 in cash prior to the issuance of such release.

**C.  Acts of Utility and Former Digital Employee McKee, McKee's Employment Agreement with Digital, Digital's Customers and Trade Secrets**

23.  On February 2, 2012, Digital and McKee executed and entered into an Employment Agreement containing within it a Non-Competition as well as a Confidentiality and Non-Disclosure Agreement provision.  A copy of the Employment Agreement is attached to this Complaint as **EXHIBIT 4** and by reference incorporated herein.

24.  Under the Employment Agreement, McKee's was given and accepted responsibility for the marketing, promotion and sale of Digital's products in the states of Ohio, Indiana and Michigan.

25.  Under the heading "Non-Competition", McKee's Employment Agreement provides in relevant part, as follows:

a.  The Employee acknowledges that during Employee's employment with Digital Ally, Employee, at the expense of Digital Ally, will be specially trained in Digital Ally's business, will establish favorable relations with

Digital Ally's customers, clients, accounts and vendors and will use and have access to Digital Ally's Trade Secret Information;

b.   In consideration of such training, relations and access, and to further protect Digital Ally's Trade Secret Information and other confidential information, **Employee agrees that during the term of Employee's employment by Digital Ally, and for a period of two years from and after the voluntary or involuntary termination of such employment, for any or no reason, Employee will not, directly or indirectly, without the express written consent of Digital Ally**, except when and as directed to in the performance of Employee's duties under this agreement:

   i.   **Own, manage, operate, control or have any interest, financial or otherwise, in or act as an officer, director, partner, principal member, manager, shareholder, employee, agent representative, consultant or independent contractor of, or in any way assist any person or entity in the conduct of any business or enterprise which competes with the digital and electronic products of Digital Ally. Digital Ally sells and distributes its products throughout the United States and internationally;**

   ii.   **Directly or indirectly solicit or divert, or attempt to solicit or diver, any customers, clients, or accounts of Digital Ally;**

   iii.   **Accept any business relationship from any customers, clients of accounts at Digital Ally;**

   iv.   **Directly or indirectly request or advise any customers of Digital Ally to withdraw, curtail or cancel business with Digital Ally; or**

   v.   **Directly or indirectly use or disclose to any person, firm or corporation, the names or addresses of any of the customers, clients or accounts of Digital Ally.**

26.   Likewise, under the heading "Confidentiality and Non-Disclosure", McKee's

Employment Agreement provides that:

a.   **Employee acknowledges that Digital Ally regards and treats information relating to digital video, electronic properties owned or developed by Digital Ally and its polices, processes, procedures, sales information, sales techniques, marketing techniques and practices, internal affairs, test methods and data , cost and pricing data, quality assurance, customer service, customer identity, customer lists and supply lists as confidential and proprietary information constituting**

9

**Trade Secret Information. Employee agrees that Employee will not, during either the term of his or her employment, or for a period of two years thereafter, directly or indirectly, use or reveal any such Trade Secret Information to any subsequent employer or other unauthorized person;**

b.    **Employee shall not reproduce or make copies of the Trade Secret Information or employee's work, except as required in the performance of the Employee's work with Digital Ally. Upon termination of this agreement for any reason, Employee shall promptly cease using and deliver to Digital Ally all Trade Secret Information and any other correspondence, drawings, blue prints, manuals, letters, notes, notebooks, reports, flow-charts, programs, electronic files, proposals or documents concerning Digital Ally or Digital Ally's customers, clients, vendors, suppliers, products or processes used by Digital Ally, and all other documents, writings, materials, licenses, access codes, software or subscriptions utilized by Employee, together with any copies or other reproductions thereof made by Employee;**

c.    **Employee shall not, during or at any time subsequent to Employee's employment with Digital Ally, without Digital Ally's written consent, disclose or use the Trade Secret Information or engage in any action, or such action or inaction may result in:**

   i.    **The unauthorized use or disclosure of any or all such Trade Secret Information to any person or entity;**

   ii.   **The infringement of any or all property rights of Digital Ally.**

27.    McKee's Employment Agreement defines "Trade Secret Information" in the context of an attached EXHIBIT A which states that **"TRADE SECRET INFORMATION"** will include but not be "limited to the following" whether "or not developed by" McKee:

(A)    Research and development work; source code; object code; run-time libraries; system documentation; software-related documentation; system configurations; hardware design; firmware design; developments, ideas, writing, and expressions; improvements, techniques, know-how, innovations, processes, current or proposed products; works, information, reports, papers, logos and methods of manufacture, distribution, management or other methods (whether or not reduced to writing and whether or not patentable or protectable by copyright); construction, layout, and operation of Digital Ally's facilities and equipment; all of these items both for customers/clients and for Digital Ally's internal operations;

(B)     Names and identities of former, existing, and prospective customers/clients not well known to the trade; all contacts at all such customers/clients whether or not such customers/clients are well known to the trade; contents of proposals for sales, maintenance, service, license, and other contracts; contents of all such contracts with all former, existing, and prospective customers/clients; costing and estimation procedures and formulas regarding proposals and other uses; sales, profit and loss, profit margin, production costs, overhead, and other financial and accounting information; all information regarding business development and marketing; names and identities of vendors and suppliers not well known to the trade; all contacts at all such vendors and suppliers whether or not such vendors and suppliers are well known to the trade; costs and contents of proposals and actual contracts with all such vendors and suppliers; and

(C)     Confidential information revealed to Digital Ally by third parties and which Digital Ally is obligated to keep confidential; all copies of this Agreement, and any other information that may be considered by Digital Ally as Digital Ally's confidential information.  See **EXHIBIT 4**, Exhibit A thereto.

28.     Finally, the Employment Agreement provides that "**[i]n the event of the breach of threatened breach of any provision of the Agreement by either party, the other party shall be entitled to injunctive relief, both preliminary and final, enjoining and restraining such breach or threatened breach.  Such remedies shall be in addition to all other remedies available at law or in equity, including Digital Ally's right to recover from Employee any and all damages that may be sustained as result of Employee's breach of this Agreement, including costs and reasonable attorney's fees"** (emphasis added).

29.     As a Digital employee, McKee was and is subject to Digital's Code of Ethics and Conduct ("Code of Ethics").   A copy of the Code of Ethics in effect during McKee's employment at Digital is attached as **EXHIBIT 5** and by reference incorporated herein.

30.     In the Code of Ethics, "the terms 'Digital People', 'you' and 'your' refer to all Digital employees, directors and independent contractors".   These terms include McKee. **EXHIBIT 5**, p. 1.

11

31.     In the Code of Ethics, "the terms 'Digital', the 'Company', 'we', and 'our' refer to Digital Ally, Inc." **EXHIBIT 5**, p. 1.

32.     Digital's Code of Ethics reinforced McKee's obligations to Digital regarding Non-Competition, Confidentiality and Non-Disclosure and Trade Secret Information.

33.     Under the heading "Protecting Confidential Information", the Code of Ethics provides:

### 5.0 Protecting Confidential Information

### 5.1 Digital Confidential Information

You will often have access to information that is private to Digital, has not been made public and constitutes trade secrets or proprietary information. Protection of this information is critical to our ability to grow and compete.

Under the laws of most countries where we do business, trade secrets are legally protected property as long as they remain secret (meaning not generally or publicly known).

Your obligations with respect to our confidential trade secrets and proprietary information are:

- not to disclose the information outside of Digital.
- not to use the information for any purpose except to benefit Digital's business.
- not to disclose the information within Digital, except to other Digital people who need to know, or use, the information and are aware that it constitutes a trade secret or proprietary information.

These obligations continue even after you leave Digital, until the information becomes publicly available or until we no longer consider it a trade secret or proprietary information. **We remind you that you may have previously signed, as a condition of your employment, a Non-Disclosure, Non-Solicitation or Non-Compete Agreement, Employment Agreement or other similar agreement that contains governs your obligations with respect to our information**. Any documents, papers or records that contain trade secrets or proprietary information are our property, and must remain at the company.

12

> Our confidential trade secrets and proprietary information may include, among other things, information regarding our operations, business plans, customers, strategies, trade secrets, records, finances, assets, technology, data or other information that reveals the processes, methodologies, technology or "know how" by which our existing or future products, services, applications or methods of operation are developed, conducted or operated.  **EXHIBIT 5**, p. 6.

34.     The Code of Ethics likewise demonstrates Digital's reasonable efforts, under the circumstances, to protect and maintain the secrecy of its Confidential and Trade Secret Information.

35.     McKee's employment with Digital ended on August 24, 2012.

36.     In April, 2014, Digital discovered that McKee was employed by Utility as a sales manager for a region that includes the states of Ohio, Indiana and Michigan.  See **EXHIBIT 6**, Utility Sales Manager Territory Assignments.

37.     McKee's Employment Agreement with Digital prohibits him from accepting employment at or in any manner assisting any company that competes with Digital in the field/category of digital electronic products for a period of two years following termination of his employment with Digital.

38.     McKee has violated and is violating his Employment Agreement with Digital by accepting employment at and providing services to assistance to Digital's direct competitor, Utility.

39.     McKee's breach is both willful and egregious because his territory as sales manager for Utility includes precisely the same territory which he served as a Digital employee.

40.     McKee's Employment Agreement with Digital also precludes him from disclosing or using any of Digital's Trade Secret Information, including, *inter alia*, customer lists, bidding and contracting procedures, estimating processes/protocols, etc., as set forth above.

41.     Upon information and belief, and in violation of his Employment Agreement with Digital, McKee has disclosed and used and is disclosing and using Digital's Trade Secret Information in his employment with Utility for Utility's benefit.

42.     On April 21, 2014 and April 24, 2014, counsel for Digital directed a letter to McKee, informing him of his violation of the Non-Compete agreement contained in the Employment Agreement, and about Digital's concerns about McKee's use of Trade Secret Information, again, in violation of the Employment Agreement.  Copies of those letters are attached to this Complaint as **EXHIBITS 7** and **8** and by reference incorporated herein.

43.     McKee responded to neither of those letters.

44.     On April 21, 2014, counsel for Digital directed a letter to counsel for Utility, a copy of which is attached to this Complaint as **EXHIBIT 9** and by reference incorporated herein. In that letter, Digital informed Utility of each/all of the following:

McKee's employment by Utility violated the Non-Compete Agreement contained in McKee's Employment Agreement with Digital;

Digital was concerned about McKee's use of Digital's Trade Secret Information now that he was employed by its direct competitor Utility in violation of the Employment Agreement;

Utility should verify that Utility did not know about the Employment Agreement's provisions of Non-Competition and non-disclosure until it received such letter from counsel for Digital;

Utility should confirm that McKee had not provided to Utility any of Digital's Trade Secret Information;

Utility should confirm that McKee was not soliciting Digital's customers on behalf of Utility;

Utility should confirm whether, given the Non-Compete and Non-Disclosure Agreements contained in McKee's Employment Agreement with Digital, Utility intended to continue employing McKee.

45.     By letter dated April 23, 2014, a copy of which is attached to this  Complaint as

**EXHIBIT 10** and by reference incorporated herein, counsel for Utility responded to counsel for

Digital.  In that letter, Utility asserted that "**[t]he Employment Agreement referenced and**

14

enclosed in said letter is between **Digital Ally Inc. and Mr. Eric McKee**"; that "**Utility understands this to be a matter between those parties**"; that Utility was both uninterested and unconcerned with any such matters, and that Utility would provide no information to Digital whatsoever regarding McKee or his employment by Utility in violation of the Employment Agreement.

### COUNT I
### (Tortious Interference With Contract And Expectations Against Utility)

46.     Digital restates and incorporates ¶¶ 1 through 45 hereinabove.

47.     Digital has valid and enforceable contracts and reasonable business expectancies with its customers, clients and potential customers and clients.

48.     Digital's contracts and expectancies provide economic benefits to Digital.

49.     Utility knows of Digital's business contracts and expectancies with its customers, clients and potential customers and clients.

50.     Digital's contracts and expectancies with its customers and clients and potential customers and other clients would continue undiminished and unaltered but for the conduct of Utility in threatening Digital's customers regarding the '556 Patent, a patent upon which Utility admits it does not claim Digital infringed.

51.     Further, Utility has threatened to send the same threats regarding the '556 Patent to Digital's clients, customers and potential customers, potentially causing even greater damage to Digital.

52.     Utility' interference and threatened interference with Digital's contracts and expectancies is intentional, improper and unjustified.

53.     As a result of Utility's actions, Digital has been and continues to be damaged in an amount in excess of $100,000, exclusive of interest and costs.

54.     Utility's actions were malicious, willful and/or wanton, entitling Digital to an award of punitive/exemplary damages against Utility.

## COUNT II
### (Defamation/Business Libel Against Utility)

55.     Digital restates and incorporates ¶¶ 1 through 54 hereinabove.

56.     Utility published each and every of the statements referenced above.

57.     Each and every of those statements was false and defamatory.

58.     Each and every of those statements identified Digital.

59.     Utility published each and every of the defamatory statements regarding Digital knowing them to be false, or with reckless disregard for their truth or falsity.

60.     As a direct and proximate result of Utility's defamatory statements, Digital's reputation has been damaged and continues to be damaged.

61.     As a result of Utility's actions, Digital has been and continues to be pecuniarily damaged in an amount in excess of $100,000, exclusive of interest and costs.

62.     Utility's actions were malicious, willful and/or wanton, entitling Digital to an award of punitive/exemplary damages against Utility.

## COUNT III
### (Injunctive Relief – Defamatory Statements – Against Utility)

63.     Digital restates and incorporates ¶¶ 1 through 62 hereinabove.

64.     Utility has made, broadcast and published the statements concerning Digital, and its sale of items infringing upon the '556 Patent, each of which was and is materially false, as shown by Utility's admission that it does not claim Digital infringed that Patent.

16

65.     These letters and statements contains untrue, damaging and libelous information regarding Digital, which information damages Digital's contracts and expectancies with its customers, clients and potential customers and clients.

66.     Further, Utility has threatened to send this same untrue, damaging and libelous information to others among Digital's clients, customers and potential customers.

67.     Utility' acts and threatened acts damage and threaten to do future damage to Digital's reputation and bottom line and value as a publicly traded company.

68.     Utility' actions have caused and will continue to cause Digital's immediate, immeasurable and irreparable harm.

69.     Digital has no adequate remedy at law to protect it from the injury and damage that Digital has suffered, continues to suffer and will suffer in the future as a result of Utility' illegal acts.

## COUNT IV
### (Breach Of The Employment Agreement – Against McKee)

70.     Digital restates and incorporates herein ¶¶ 1 through 69 hereinabove.

71.     Digital and McKee entered into a valid and enforceable Employment Agreement that is supported by sufficient consideration.

72.     Under the Employment Agreement, McKee agreed not to solicit or service any of Digital's clients for a period of two years following his separation from Digital for any reason.

73.     Under the Employment Agreement, McKee agreed not to disclose or use Digital's Trade Secret Information.

74.     Digital fully performed or stood willing to perform all of its duties and obligations under the Employment Agreement.

4815950_1

75.     McKee has breached and continues to breach the Employment Agreement by working for Digital's direct competitor, Utility.

76.     Further, upon information and belief, in violation of his Employment Agreement with Digital, McKee is disclosing and using Digital's Trade Secret Information in his employment with Utility.

77.     As a result of McKee's breach, Digital has been damaged, in an amount in excess of $100,000, exclusive of interest and costs, plus attorneys' fees incurred, pursuant to the Employment Agreement.

### COUNT V
### (Tortious Interference With Contract And Expectations – Against Utility and McKee)

78.     Digital restates and incorporates herein ¶¶ 1 through 77 hereinabove.

79.     Digital has valid and enforceable contracts and reasonable expectancies with its customers and clients.

80.     Digital's contracts and expectancies provide economic benefits to Digital.

81.     Utility and McKee know of Digital's business contracts and expectancies with its customers and clients.

82.     McKee is Utility's agent, thus Utility is liable for his actions.

83.     Digital's contracts and expectancies with its customers and clients would continue undiminished and unaltered but for the conduct of Utility and McKee in interfering with Digital's contracts and expectancies with its customers and clients, in violation of his Employment Contract with Digital and by McKee's use of Digital's Trade Secret Information without permission.

84.     Utility's and McKee's interference with Digital's contracts and expectancies is intentional, improper and unjustified.

85.     As a result of Utility's and McKee's actions, Digital has been and continues to be damaged, in an amount in excess of $100,000, exclusive of interest and costs.

86.     The actions of Utility and McKee were and are malicious, willful and/or wanton, entitling Digital to an award of punitive damages against Utility and McKee.

## COUNT VI
### (Injunctive Relief – Tortious Interference – Against Utility and McKee)

87.     Digital restates and incorporates herein ¶¶ 1 through 86 hereinabove.

88.     McKee, as Utility's agent, is currently soliciting, calling upon and/or servicing companies, groups or entities that were clients of Digital that McKee serviced while employed by Digital, and upon information and belief, all while illegally using Digital's Trade Secret Information in breach of his Employment Agreement with Digital.

89.     Utility and McKee are attempting to divert to Utility compensation which Digital would receive under expectancies with its clients.

90.     Upon information and belief, Utility and McKee have and are using Digital's confidential and proprietary property and Trade Secret Information without permission.

91.     Utility's and McKee's actions have caused and will continue to cause Digital immediate, immeasurable and irreparable future harm.

92.     The Employment Agreement grants Digital the right to obtain temporary and permanent injunctive relief in the event of McKee's breach thereof.

93.     Digital has no adequate remedy at law to protect it from the continuing future injuries Utility's and McKee's actions are causing.

## COUNT VII
### (Tortious Interference With Contract And Expectations – Against Utility)

94.     Digital restates and incorporates herein ¶¶ 1 through 93 hereinabove.

95.     Digital has a valid and enforceable Employment Agreement with McKee.

96.     Digital's Employment Agreement with McKee provides economic benefits to Digital.

97.     Utility knows the terms of Digital's Employment Agreement with McKee.

98.     Utility has hired McKee, in violation of his Employment Agreement with Digital.

99.     Digital's Employment Agreement with McKee would continue undiminished and unaltered but for the conduct of Utility hiring McKee in violation of his Employment Agreement with Digital, assigning him to the very territory he serviced for Digital, and, upon information and belief, allowing McKee to use Digital's Trade Secret Information without permission.

100.    Utility's interference with Digital's Employment Agreement with McKee is intentional, improper and unjustified.

101.    As a result of Utility's actions, Digital has been and continues to be damaged, in an amount in excess of $100,000, exclusive of interest and costs.

102.    Utility's actions were and are malicious, willful and wanton, entitling Digital to an award of punitive/exemplary damages against Utility.

## COUNT VIII
### (Injunctive Relief – for Tortious Interference - Against Utility)

103.    Digital restates and incorporates herein ¶¶ 1 through 102 hereinabove.

104.    Utility's actions in hiring McKee in violation of his Employment Agreement with Digital have caused and will continue to cause Digital immediate, immeasurable and irreparable harm.

105.    Digital has no adequate remedy at law to protect it from the continuing injuries Utility's actions in interfering with Digital's Employment Agreement with McKee are causing.

### COUNT IX

**(Violation of the Kansas Uniform Trade Secrets Act, Kan. Stat. Ann. § 60-3320, *et seq.*
Against Utility and McKee)**

106.     Digital restates and incorporates herein ¶¶ 1 through 105 hereinabove.

107.     Digital's processes, formulas, designs, sales figures, customer lists, customer contact information, estimating and bid formulation process and procedures, new product information, product quality control and customer satisfaction information, policies and procedures and other marketing, financial and business information are and represent information from which Digital derives competitive advantage and other independent economic value, whether actually or potentially, by virtue of the fact that such information is not generally known nor readily ascertainable through proper means by other persons who could themselves obtain economic value from the disclosure or use of such information.

108.     Such information is the subject of efforts by Digital which are reasonable, under the circumstances, to maintain the secrecy thereof including, without limitation, the following:

       1)     Restricting access to such information to members of Digital's management;

Requiring that all members of management execute and enter into a Confidentiality Agreement prohibiting the disclosure of such information; and

Requiring all employees and members of management to abide by Digital's Code of Ethics which likewise prohibits the disclosure of such information.

109.     In all respects, such information constitutes trade secrets within the meaning of Kan. Stat. Ann. § 60-3320(4).

110.     Utility has misappropriated such trade secrets within the meaning of Kan. Stat. Ann. § 60-3320(2) for the reasons that:

       1)     It has acquired such trade secrets from McKee with knowledge or with reason to know that it has thereby acquired such secrets by improper means;

2)     It has used improper means to acquire knowledge of such trade secrets from McKee;

3)     It has used improper means to acquire knowledge of such trade secrets and then used such trade secrets without the express or implied consent of Digital;

4)     It has used these trade secrets without Digital's express or implied consent when, at the time such trade secrets were disclosed to it, Utility knew or had reason to know that its knowledge thereof:

      i.     Was derived from or through persons who had utilized improper means to acquire such trade secrets; or

     ii.     Was derived from or through persons who owed a duty to Digital to maintain the secrecy or limit the use of such trade secrets.

111.    Similarly, McKee misappropriated Digital's trade secrets for the reasons that:

1)     He has disclosed such trade secrets to Utility without Digital's express or implied consent when, at the time of such disclosure, he knew or had reason to know that he had acquired knowledge of such trade secrets under circumstances giving rise to a duty to maintain the secrecy or to limit the use thereof; and

2)     He has disclosed such trade secrets to Utility without Digital's express or implied consent when, at the time of such disclosure, he knew or had reason to know that the knowledge of such trade secrets was derived from or through persons who owed a duty to Digital to maintain the secrecy or limit the use thereof.

112.    As a direct and proximate result of the misappropriation of such trade secrets by Utility and McKee, Digital has been damaged in its trade and business and in an amount exceeding $100,000 as provided by K.S.A. § 60-3322(a), exclusive of interest and costs.

113.    Utility and McKee's willful and malicious appropriation of Digital's trade secrets also entitles Digital to an award of punitive damages in an amount not exceeding its damages under K.S.A. § 60-3323(iii), pursuant to K.S.A. § 60-3323(b).

114.     The appropriation of Digital's trade secrets by Utility and McKee was and is willful and malicious, entitling Digital to an award of its attorneys' fees incurred, pursuant to K.S.A. § 60-3323(iii).

## COUNT X
### (Injunctive Relief – Violation of Kansas Uniform Trade Secrets Act – Against Utility and McKee)

115.     Digital restates and incorporates herein ¶¶ 1 through 114 hereinabove.

116.     Utility's and McKee's actions in appropriating Digital's trade secrets in violation of the Kansas Uniform Trade Secrets Act, as set forth above, have caused and will continue to cause Digital immediate, immeasurable and irreparable harm.

117.     Digital has no adequate remedy at law to protect it from the continuing injuries Utility's and McKee's actions in appropriating Digital's trade secrets are causing, and Digital is entitled to an injunction prohibiting Utility's and McKee's appropriation of Digital's trade secrets pursuant to K.S.A. § 60-3321(a).

## COUNT XI
### (Conversion – Against Utility and McKee)

118.     Digital restates and incorporates herein ¶¶ 1 through 117 hereinabove.

119.     McKee did not have permission to retain and use Digital's confidential and proprietary property and Trade Secret Information in connection with his employment at Utility or otherwise.

120.     Upon information and belief, McKee continues to exercise dominion and control over Digital's property to the detriment of Digital's ownership interests and rights to possession.

121.     McKee has not returned Digital's property.

122.     McKee is Utility's employee and agent, such that Utility is liable for his acts, and/or, as McKee's employer, has actual and unauthorized possession of Digital's property.

123.     As a result of Utility and McKee's conversion of Digital's property, Digital has been damaged, in an amount in excess of $100,000, exclusive of interest and costs.

124.     The actions of Utility and McKee were and are malicious, willful and/or wanton, entitling Digital to an award of punitive damages against Utility and McKee.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Digital Ally, Inc. prays for the following relief against Defendant Utility Associates, Inc. and Eric McKee:

A.     On Count I of the Complaint, judgment in favor of Digital and against Utility for tortious interference with contract and expectations in an amount in excess of $100,000, for punitive damages in an amount sufficient to punish Utility and to deter others from similar wrongs, and for Digital's costs and expenses incurred herein;

B.     On Count II of the Complaint, judgment in favor of Digital and against Utility for defamation/business libel in an amount in excess of $100,000, for punitive damages in an amount sufficient to punish Utility and to deter others from similar wrongs, and for Digital's costs and expenses incurred herein;

C.     On Count III of the Complaint, for temporary, preliminary and permanent injunctive relief against Utility, restraining, enjoining and prohibiting Utility and all persons in concert with them or who may have notice of such relief from doing, causing or promoting any of the following:

    1)     claiming or representing to any firm, person or entity that any product manufactured by Digital, including those referenced in paragraph 10 above, infringes on the '556 Patent.

D.      On Count IV of the Complaint, judgment in favor of Digital and against McKee for breach of contract in an amount in excess of $100,000, and for Digital's costs, attorney's fees and expenses incurred herein, plus an award of Digital's attorneys' fees incurred herein pursuant to the Employment Agreement;

E.      On Count V of the Complaint, judgment in favor of Digital and against Utility McKee, jointly and severally, for tortious interference with contract and expectations in an amount in excess of $100,000, for punitive damages in an amount sufficient to punish Utility and McKee and to deter others from similar wrongs, and for Digital's costs and expenses incurred herein;

F.      On Count VI of the Complaint, for temporary, preliminary and permanent injunctive relief against Utility and McKee, restraining, enjoining and prohibiting Utility and McKee and all persons in concert with them or who may have notice of such relief from doing, causing or promoting any of the following:

    1)      Contacting or attempting to contact Digital's customers in violation of McKee's Employment Agreement with Digital; and/or

    2)      Using, or attempting to use, in any way, Digital's Trade Secret Information in any way.

G.      On Count VII of the Complaint, judgment in favor of Digital and against Utility for tortious interference with contract and expectations in an amount in excess of $100,000, for punitive damages in an amount sufficient to punish Utility and to deter others from similar wrongs, and for Digital's costs, attorney's fees and expenses incurred herein;

H.      On Count VIII of the Complaint, for temporary, preliminary and permanent injunctive relief against Utility, restraining, enjoining and prohibiting Utility and all persons in concert with them or who may have notice of such relief from doing, causing or promoting any of the following:

4815950_1

      1)      Continuing to employ McKee in violation of his Employment Agreement with Digital; and/or

      2)      In any way using or attempting to use Digital's Trade Secret Information, which McKee promised to keep confidential.

I.      On  Count IX of the Complaint, judgment in favor of Digital and against Utility and McKee, jointly and severally, for violation of the Kansas Uniform Trade Secrets Act, Kan. Stat. Ann. § 60-3320, in an amount in excess of $100,000, for exemplary damages pursuant to the Kansas Uniform Trade Secrets Act, for Digital's attorneys' fees incurred pursuant to the Kansas Uniform Trade Secrets Act, and for Digital's costs and expenses incurred herein;

J.      On Count X of the Complaint, for temporary, preliminary and permanent injunctive relief against Utility, pursuant to K.S.A. § 60-3321(a), restraining, enjoining and prohibiting Utility and all persons in concert with it or who may have notice of such relief from doing, causing or promoting any of the following:

      1)      Acquiring Digital's trade secrets from McKee;

      2)      Using or attempting to use Digital's trade secrets in any way without Digital's consent;

And for temporary, preliminary and permanent injunctive relief against McKee, pursuant to K.S.A. § 60-3321(a), restraining, enjoining and prohibiting McKee and all persons in concert with him or who may have notice of such relief from doing, causing or promoting any of the following:

      1)      Disclosing Digital's trade secrets to Utility without Digital's consent; and

      2)      Using, or attempting to use in any way, Digital's trade secrets without Digital's consent.

K.      On Count XI of the Complaint, judgment in favor of Digital and against Utility and McKee, jointly and severally, for conversion in an amount in excess of $100,000, for

punitive damages in an amount sufficient to punish Utility and McKee and to deter others from similar wrongs, and for Digital's costs and expenses incurred herein;

L.      Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Digital Ally demands a trial by jury on all issues so triable.

## DESIGNATION OF PLACE OF TRIAL

Digital Ally hereby designates Kansas City, Kansas as place of trial pursuant to Local Rule 40.2.

Respectfully submitted,

McDOWELL, RICE, SMITH & BUCHANAN

*/s/ James F.B. Daniels*
James F.B. Daniels, KS Fed #70468
Michael J. Gorman, KS Fed #70249
605 W. 47th Street, Suite 350
Kansas City,  MO 64112-1905
816-753-5400
816-753-9996 (Telecopier)
jdaniels@mcdowellrice.com
mgorman@mcdowellrice.com

ATTORNEYS FOR PLAINTIFF

4815950_1

## AFFIDAVIT

The undersigned Stanton E. Ross, being duly sworn, states:

1.  My name is Stanton E. Ross and I am CEO of Plaintiff Digital Ally, Inc.

2.  This affidavit is made on personal knowledge and if called, I could/would testify to the facts set forth herein.

3.  I have read the foregoing Complaint for Injunction, Tortious Interference, Business Libel and Damages and the facts set forth therein are true to the best of my knowledge and, where stated, information and belief.

Date: 5-30-14

_____
STANTON E. ROSS, CEO
DIGITAL ALLY, INC.

STATE OF Kansas        )
                       ) ss:
COUNTY OF Johnson      )

Subscribed and sworn to before me this 30 day of May, 2014.

_____
Notary Public

My commission expires: 8/29/17

CHRISTA R. JOHNSON
Notary Public
State of Kansas

4815950_1