IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**DIGITAL ALLY, INC.,**

    **Plaintiff,**

    v.

**UTIITY ASSOCIATES, INC.,** *et al.***,**

    **Defendants.**

Case No. 14-2262-CM

### MEMORANDUM AND ORDER

Plaintiff Digital Ally, Inc. is a Nevada corporation with its principal place of business in Johnson County, Kansas. Defendants are Utility Associates, Inc., a Delaware corporation with its principal place of business in Tucker, Georgia ("Utility"), and Eric McKee, who is proceeding pro se and is a resident of the state of Indiana. Plaintiff brought this suit alleging the following counts: (1) tortious interference with contract and expectations, (2) defamation/business libel arising out of false/unfounded claims of patent infringement, (3) injunctive relief regarding count two, (4) breach of employment agreement, (5) tortious interference with plaintiff's sales contracts and commercial expectations and customer relationships, (6) injunctive relief regarding count five, (7) tortious interference with plaintiff's employment agreement, (8) injunctive relief regarding count seven, (9) violation of the Kansas Uniform Trade Secrets Act pursuant to Kan. Stat. Ann. § 60-3320, et seq., (10) injunctive relief regarding count nine, (11) conversion, (12) false advertising, and (13) injunctive relief regarding count twelve. Against Utility are all counts except count four; against McKee are counts four, five, six, nine, ten, and eleven.

Before the court is Utility's Motion to Dismiss (Doc. 31).[1]

**I. Facts**

---

[1] Defendant McKee has not filed a formal motion but has filed memoranda that incorporate defendant Utility's legal briefs.

Plaintiff is a public company engaged in the business of designing, developing, manufacturing, and selling mobile digital recording equipment that is primarily used by law enforcement agencies, branches of the United States' Armed Forces, and other public and private organizations. Utility is a public company that competes with plaintiff in the area of mobile video recording and transmission.

Plaintiff employed defendant McKee until August 24, 2012, working as a sales manager for a region that included the states of Ohio, Indiana, and Michigan. On February 2, 2012, plaintiff and Mr. McKee entered into an employment agreement ("Employment Agreement") that contained non-compete and non-disclosure provisions. The agreement was to remain in effect for two years from the date of Mr. McKee's employment termination—regardless of reason. (In this case, the agreement was effective from August 24, 2012 to August 24, 2014.) In December 2013, Mr. McKee states that he twice told Utility's Vice President of Sales, Criss Cross, that he had the Employment Agreement with plaintiff. (Doc. 46.) In January 2014, Utility hired Mr. McKee; he became a "sales agent" assigned to the Midwest region, which included the states of Ohio, Indiana, and Michigan. McKee alleges he again informed Mr. Cross of the non-compete agreement in January 2014 during a company meeting in his first week of employment. (*Id.*) Mr. McKee is no longer an employee of Utility.

## II. Legal Standards for Personal Jurisdiction under Rule 12(b)(2)

Plaintiff has the burden to establish personal jurisdiction over each defendant. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). Because the court decides this motion on the basis of affidavits and other written materials, plaintiff only needs to make a prima facie showing of personal jurisdiction. *Id*. The court assumes the allegations in the complaint are true to the extent they are not controverted, and all factual disputes are resolved in plaintiff's favor. *See Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (discussing a motion to dismiss for lack of personal jurisdiction and stating "[w]e must resolve any factual disputes in the plaintiff's favor"). "In order to

defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Proud Veterans, LLC v. Ben-Menashe*, 12-CV-1126-JAR, 2014 WL 791200, at *4 (D. Kan. Feb. 27, 2014) (quoting *OMI Holdings*, 149 F.3d at 1091)).

### III.  Minimum Contacts

In federal diversity cases, the court's jurisdiction over defendants depends on the law of the forum state.  Fed. R. Civ. P. 4(e); *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011).  The district court must determine: (1) whether the defendant's conduct falls within the forum state's long-arm statute, and (2) whether the exercise of personal jurisdiction over the defendant satisfies the constitutional guarantee of due process.  *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070  (10th Cir. 2008) (citing *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2008)).  Because Kansas courts construe the long-arm statute to the same limits allowed by federal due process, the court proceeds directly to the due process inquiry.  *OMI*, 149 F.3d at 1090.

Analyzing due process is a two-step process.  First, the court must find that the defendant has "minimum contacts" with the forum state such that the defendant 'should reasonably anticipate being haled into court there.'"  *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010) (quoting *OMI*, 149 F.3d at 1091).  Second, assuming those minimum contacts exist, the defendant's contacts must be such "that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (internal quotations omitted).

"Minimum contacts" may be established in two ways:  general jurisdiction and specific jurisdiction.  Plaintiff only alleges specific jurisdiction, so the court will conduct its analysis accordingly.  The recent Supreme Court case, *Walden v. Fiore*, explains the "minimum contacts"

analysis as it relates to specific jurisdiction. 134 S. Ct. 1115 (2014). Due process permits specific jurisdiction over a nonresident defendant where that defendant's suit-related conduct creates a substantial connection with the forum state. *Id.* at 1121. That relationship is governed by two principles: (1) it must arise out of the contacts that the defendant *himself* creates with the forum state, and (2) it looks to the defendant's contacts with the forum state itself—not the defendant's contacts with persons who reside there. *Id.* at 1122. In other words, a defendant's own actions must create contacts with the forum state—not the forum resident. Finally, due process requires that each defendant's contacts be analyzed independently, "based on [that defendant's] own affiliation with the state." *Id.*

In the Tenth Circuit, a court has specific jurisdiction over a nonresident defendant "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *OMI Holdings*, 149 F.3d at 1091 (quoting *Burger King*, 471 U.S. at 472). The Tenth Circuit explained how to evaluate whether a defendant "purposefully directed" his activities at the forum:

> In the tort context, we often ask whether the nonresident defendant "purposefully directed" its activities at the forum state; in contract cases, meanwhile, we sometimes ask whether the defendant "purposefully availed" itself of the privilege of conducting activities or consummating a transaction in the forum state. In all events, the shared aim of "purposeful direction" doctrine has been said by the Supreme Court to ensure that an out-of-state defendant is not bound to appear to account for merely "random, fortuitous, or attenuated contacts" with the forum state.

*Dudnikov*, 514 F.3d at 1071 (internal citations omitted).

Here, plaintiff alleges specific jurisdiction over Utility and McKee for tort and contract causes of action, respectively.

**A. Purposeful Direction—As to Defendant Utility**

For tort claims, purposeful direction requires a plaintiff show that a defendant "(1) intentionally acted, (2) in a manner expressly aimed at Kansas, with (3) knowledge that the brunt of the injury would be felt in Kansas." *Proud Veterans*, 2014 WL 791200, at *6. "[T]he mere foreseeability of causing an injury in the forum state is, standing alone, insufficient" to establish specific jurisdiction over a nonresident. *Dudnikov*, 514 F.3d at 1077.

### 1. Intentionally Acted

The Tenth Circuit has yet to establish a test for the first prong of "effects test," a test outlined by the Supreme Court in *Calder v Jones*, 465 U.S. 783, 104 S. Ct. 1482 (1984). Because the court considers plaintiff's allegations as true at this stage in the litigation, plaintiff must merely allege an intentional action by defendant to satisfy the first requirement of the "effects test." *See Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 97 (10th Cir. 2012) *cert. denied*, 133 S. Ct. 941 (2013); *see also Jayhawk Capital Mgmt., LLC v. Primarius Capital LLC*, No. 08-2202-JWL, 2008 WL 4305382, at *3 (D. Kan. Sept. 18, 2008). Plaintiff has done so here.

### 2. Expressly Aimed

To "expressly aim" one's alleged tortious conduct, the forum state must be the "focal point of the tort." *Proud Veterans*, 2014 WL 791200, at *6. "The proper question is not whether the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 134 S. Ct. at 1125. In other words, the "proper lens [is] whether the defendant's actions connect him to the forum." *Id*. at 1124. "The strength of that connection [is] largely a function of the nature of the [tort]." *Id*.

Plaintiff alleges tortious interference with the Employment Agreement between plaintiff and defendant McKee. It is undisputed that (1) the agreement existed, (2) the agreement had non-compete and non-disclosure limitations in effect until August 2014, and (3) Utility hired McKee in January

-5-

2014.  To establish a prima facie case for jurisdiction, plaintiff must show Utility had a substantial connection with Kansas, and "[t]he strength of that connection [is] largely a function of the nature of the [tort]." *Walden*, 134 S. Ct. at 1124.  The court "must accept the allegations of the complaint as true and construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff." *Greer v. Safeway*, 317 F. App'x 838, 840 (10th Cir. 2009). Plaintiff alleges that Utility knew of the Employment Agreement and plaintiff supports this allegation with an affidavit from its chief executive officer, Stanton Ross.  Utility, however, submits an affidavit, stating that Utility was unaware of the agreement until receiving a letter from plaintiff in April 2014. (Doc. 35 at 2.)  The court resolves this conflict in favor of plaintiff.  *Id*.  Further supporting plaintiff's allegation is co-defendant McKee's assertion that he told Mr. Cross, Utility's Vice President of Sales, about the non-compete agreement with plaintiff on three separate occasions.  For jurisdictional purposes, the court therefore assumes that Utility knew of the Employment Agreement when it hired McKee.  That agreement also contained a choice-of-law provision, stating that Kansas law would govern.  Utility thus created a substantial connection with Kansas by hiring McKee despite purportedly knowing of his Employment Agreement with plaintiff.  And that connection is substantial given the nature of a tortious interference claim concerning an employment contract.  In other words, Utility's conduct is not a merely "random, fortuitous, or attenuated" contact with Kansas, but a contact in which Utility "should reasonably anticipate being haled into court there."  *Proud Veterans*, 2014 WL 791200, at *5.  Accordingly, the court determines that Utility has expressly aimed its conduct at Kansas.[2]

    **3. Brunt of the Harm**

---

[2] Also bolstering this finding are other contacts between Utility and Kansas that apply to other causes of action in this case. For instance, Utility likely sent thirty-six letters into Kansas, attempting to solicit business from Kansas residents.  Plaintiff alleges some of those letters were libelous, meaning the tort of libel occurred in Kansas.  *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777 (1984) ("The tort of libel is generally held to occur wherever the offending material is circulated.").

The third prong "concentrates on the consequences of the defendant's actions—where was the alleged harm actually felt by the plaintiff." *Grynberg*, 490 F. App'x at 98 (citing *Dudnikov*, 514 F.3d at 1075). "That is, in satisfying *Calder's* first two prongs, plaintiffs have established that defendants acted with more than foresight (or knowledge) that effects would be felt" in Kansas. *Dudnikov*, 514 F.3d at 1077. For many of the reasons in the previous section, there can be no real dispute that the brunt of the harm resulting from Utility's contacts was felt in Kansas. The contract was based in Kansas for employment with a Kansas company and contained a choice-of-law provision specifying that Kansas law governed any breach of the agreement. The court therefore concludes that the brunt of the harm was felt in Kansas.

### B. Purposeful Availment — As to Defendant McKee

The existence of a contract between a forum resident and a non-resident, *standing alone*, is insufficient to confer specific jurisdiction. *Proud Veterans*, 2014 WL 791200, at *6. Similarly, a choice-of-law provision—by itself—is insufficient to establish personal jurisdiction. *Cargill Meat Solutions Corp. v. Premium Beef Feeders, LLC*, No. 13-CV-1168-EFM-DJW, 2014 WL 172197, at *3 (D. Kan. Jan. 15, 2014) (citing *Burger King*, 471 U.S. at 482)). While an employment agreement with an employer is insufficient to justify personal jurisdiction in the employer's state, "the mere fact that defendant performed much of the contract outside Kansas does not defeat jurisdiction." *Id*. (citing *Equifax Servs., Inc. v. Hilz*, 905 F.2d 1355, 1358–1359 (10th Cir. 1990)).

Plaintiff argues that McKee had additional contacts with Kansas. McKee received instructions, assignments and other communications from his superiors, directed all of his inquiries regarding plaintiff's products and marketing strategies to plaintiff's personnel in Kansas, and attended at least one sales meeting in plaintiff's Kansas offices at the expense of plaintiff. McKee's salary and benefits were distributed from Kansas, through Kansas banks. Courts have found such contacts sufficient in

Case 2:14-cv-02262-CM-KMH   Document 72   Filed 12/29/14   Page 8 of 14

establishing a defendant's minimum contacts with the forum state.  *See Marcus Food*, 671 F.3d at 1168; *Ticket Solutions, Inc. v. Cutshaw*, No. 11-2202-WEB, 2011 WL 5201746, at *4–5 (D. Kan. Oct. 31, 2011).  The Employment Agreement also contemplated at-will employment, evidencing that McKee purposefully availed himself of the laws of Kansas by continuing his employment into the foreseeable future.  *See Marcus Food*, 671 F.3d at 1168.  Although defendant McKee alleges that he signed the Employment Agreement under duress and provides a timeline of events to support his claim (Docs. 24–25; 46), the court resolves all factual disputes in favor of plaintiff.  *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008).  Accordingly, the court determines defendant McKee purposefully availed himself of the laws of Kansas by executing his Employment Agreement with plaintiff.

IV.  **"Arises Out Of" or "Related To"**

Due process requires the court to ask whether a plaintiff's injuries "arise out of or relate to" a defendant's contacts with the forum state.  *Burger King*, 471 U.S. at 472 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984)).  *Dudnikov* is instructive on this point, discussing many approaches to *Burger King*'s "arise out of or relate to" inquiry.  514 F.3d at 1078–1079.  Ultimately, the court did not decide whether it favors the "but-for" or the "proximate cause" test for purposes of establishing specific jurisdiction.  *Id*. at 1079.  In the instant case, it does not matter which test is applied.  The counts against McKee directly arise out of and relate to his Employment Agreement with plaintiff.  Indeed, the two pertinent clauses in the agreement are the bases for plaintiff's claims against both defendants:  the non-compete clause is the basis for the claims against McKee (breach of contract) and Utility (tortious interference with the Employment Agreement); the non-disclosure clause is the basis for claims against McKee and Utility (tortious interference, violation of the Kansas Uniform Trade Secrets Act, and conversion).  The Employment Agreement is "at the

-8-

very core of plaintiff['s] suit." *Dudnikov*, 514 F.3d at 1079.  Accordingly, the court concludes each defendant's contacts with this state sufficiently subject them to the jurisdiction of this court.

## V.  "Notions of Fair Play and Substantial Justice"

Now the court must determine whether the exercise of personal jurisdiction would "offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316 (internal quotation omitted).  At this point, the burden shifts to each defendant to show this court's exercise of personal jurisdiction would be unreasonable. *Dudnikov*, 514 F.3d at 1080 ("[W]e are cognizant of the fact that, with minimum contacts established, it is incumbent on defendants to 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'") (citation omitted).  In doing so, the court considers the following factors: "(1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states [or foreign nations] in furthering fundamental social policies." *Id*. (quoting *OMI*, 149 F.3d at 1095-96).  Each defendant's bar is proportional to the strength of plaintiff's "minimal contacts" showing.  *See Trujillo v. Williams*, 465 F.3d 1210, 1221 (10th Cir. 2006); *Proud Veterans*, No. 12-CV-1126-JAR, 2014 WL 791200, at *10.

### A.  As to Defendant Utility

#### 1.  Burden on Utility

Utility argues that it would be unduly burdensome to defend this suit in Kansas.  But "defending a suit in a foreign jurisdiction is not as burdensome as in the past." *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1061 (10th Cir. 2008).  Utility is a corporation with more resources than an individual.  Moreover, Utility has traveled into the jurisdiction in the past—traveling

to plaintiff's Lenexa, Kansas headquarters for a business meeting.[3]  Traveling to Kansas, then, is not "*gravely* difficult and inconvenient."  *Cargill Meat Solutions Corp. v. Premium Beef Feeders, LLC*, No. 13-CV-1168-EFM-DJW, 2014 WL 172197, at *4 (D. Kan. Jan. 15, 2014) (quoting *Burger King*, 471 U.S. at 478 (emphasis added) (quotation marks and citations omitted)).  This factor weighs in favor of plaintiff.

### 2.  Forum State's Interest in Resolving the Dispute

"States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors."  *Id*.  Plaintiff is a Kansas resident and employer.  Kansas has an interest in enforcing its employers' employment contracts, specifically non-compete and non-disclosure (or trade-secret-related) clauses.  *See id*.; *Universal Premium Acceptance Corp. v. Oxford Bank & Trust*, 227 F. Supp. 2d 1120, 1128 (D. Kan. 2003).  Kansas also has an interest where the contract requires a court to apply Kansas law.  *OMI*, 149 F.3d at 1096 ("The state's interest is also implicated where resolution of the dispute requires a general application of the forum state's law.").  Accordingly, this factor weighs heavily in plaintiff's favor.

### 3.  Plaintiff's Interest in Convenient and Effective Relief

This factor "hinges on whether the Plaintiff may receive convenient and effective relief in another forum."  *OMI*, 149 F.3d at 1097.  Plaintiff claims that a number of witnesses and the majority of the evidence resides in Kansas.  Therefore, it would be burdensome to litigate this dispute in another forum.  *Cargill*, 2014 WL 172197, at *4.

### 4.  Interstate Judicial System's Interest in Obtaining Efficient Resolution

---

[3] Also, Utility intended to solicit Kansas-based business through its numerous "informational" letters.  These letters—the dates of which include October 2013, December 2013, August 5, 2014, and August 25, 2014—are evidence of contacts for the other claims that plaintiff brings.  The court need not discuss Utility's other contacts further, though, as the employment contract supplies an adequate basis for jurisdiction.

"The key points to consider when evaluating this factor are (1) the location of witnesses, (2) the location of the wrong underlying the lawsuit, (3) what forum's law applies, and (4) whether jurisdiction is necessary to prevent piecemeal litigation." *Id*. (citation and quotation omitted). Utility's witnesses, including Mr. Cross, to the extent he is still employed with Utility, are in Georgia. Mr. McKee is a witness and he is in Indiana. Otherwise the rest of the evidence will be in Kansas: plaintiff's personnel who drafted the Employment Agreement, Mr. Ross, and witnesses who interacted with Mr. McKee during and/or after his termination. The first point favors neither party. The second and third points, however, favor plaintiff: Kansas is the situs of the agreement, and the Employment Agreement states that Kansas law governs. The fourth point favors neither party because neither jurisdiction would create piecemeal litigation.

### 5. States' Interest in Furthering Fundamental Substantive Social Policies

Nothing suggests that this factor is relevant in this case and the court does not address it.

### B. As to Defendant McKee

The court will apply those same five factors to pro se defendant McKee. The first factor favors defendant McKee. Mr. McKee is an Indiana resident. The only relevant discovery in Indiana is McKee himself. When he worked for plaintiff, Mr. McKee worked remotely from Indiana. Even though he regularly communicated with plaintiff in Kansas with respect to his employment, he is acting pro se in this action because he apparently cannot afford a lawyer.[4] Mr. McKee would be required to appear in this court at various proceedings, but he lives roughly 500 miles away and his past visit(s) to Kansas were paid for by plaintiff. This factor weighs in Mr. McKee's favor.

As for the second factor, Kansas has an interest in resolving this dispute: to protect an in-state employer and its trade secrets from a former employee's breach of contract and/or dissemination of trade secrets. This factor weighs solidly in plaintiff's favor. Factor three weighs in favor of plaintiff

---
[4] This comes from his pro se filings, which do not include an affidavit.

because of the choice of law provision in the Employment Agreement. Factors four and five offer no help in this case and the court will not address them. The question, then, is whether factors two and three outweigh factor one with the burden on defendant McKee. The court believes the answer is yes.

Defendant McKee must make a showing that is proportional to the strength of plaintiff's "minimal contacts" showing. *See Trujillo*, 465 F.3d at 1221; *Proud Veterans*, 2014 WL 791200, at \*10. The court does not believe he has made such a showing. Defendant McKee's contacts with Kansas are strong: (1) he executed an employment contract that contemplated future employment with a Kansas-based company; (2) worked for approximately seven more months, and (3) he accepted salary paid out of the state of Kansas. In doing so, defendant McKee should have known that he would be subject to a lawsuit in Kansas if he breached the Employment Agreement.[5] Given recent technological advancements, "defending a suit in a foreign jurisdiction is not as burdensome as in the past." *AST Sports*, 514 F.3d at 1061. The court believes that the strength of defendant McKee's contacts with Kansas, combined with factors two and three (weighing in plaintiff's favor), overcome McKee's allegation that he would be unreasonably burdened by this court's exercise of jurisdiction.

~ ~ ~

In conclusion, the court believes it has jurisdiction over both defendants Utility and McKee.

## VI. Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). The Supreme Court set forth the new standard for pleadings in *Twombly*, stating that pleadings should include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The pleading should include 'more than labels, conclusions, and a formulaic recitation of the elements of a cause of action.'" *Ellis v.*

---

[5] Defendant McKee can still challenge the validity of the Employment Agreement, as the court does not make determinations with respect to his claim of duress at the jurisdictional stage.

*Isoray Med., Inc.*, No. 08-2101-CM, 2008 WL 3915097, at *1 (D. Kan. Aug. 22, 2008) (quoting *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008)). The court must "accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the plaintiff." *Burnett v. Mtg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). And the court must "resolve all reasonable inferences in the plaintiff's favor." *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (quoting *Morse v. Regents of the Univ. of Colo.*, 154 F.3d 1124, 1126–27 (10th Cir. 1998)).

The court believes that plaintiff has complied with *Twombly*. The facts outlined earlier in this opinion suggest plausible claims with respect to each count. "The court does not determine whether the party will prevail; rather, the issue is whether plaintiff is permitted to offer evidence to support its claims." *Ellis*, 2008 WL 3915097, at *1. The cases that Utility supports its motion with involve cases decided under the summary judgment standard or the preliminary injunction standard. Both standards are different than the standard employed with a motion to dismiss. Additionally, "malice, intent, knowledge, and other conditions of a person's mind may be alleged *generally*." Fed. R. Civ. P. 9(b) (emphasis added). Plaintiff's amended complaint contains enough facts showing a claim that is plausible on its face, especially when factual disputes are resolved in favor of plaintiff. Accordingly, the court finds that plaintiff's complaint complies with *Twombly*.

## VII. Conclusion

The court has determined that (1) it has jurisdiction over non-resident defendant Utility and pro se defendant McKee; and (2) plaintiff's Amended Complaint (Doc. 8) provides enough facts that show each claim is plausible on its face.

**IT IS THEREFORE ORDERED** that defendant Utility's Motion to Dismiss (Doc. 31) is denied.

**IT IS FURTHER ORDERED** that the parties' provide the court with possible dates in January for a hearing regarding plaintiff's Amended Motion for a Temporary Restraining Order and for Preliminary Injunction (Doc. 9).  Parties should submit these dates to the court, via email, on or before January 7, 2015.

Dated this 29th day of December, 2014, at Kansas City, Kansas.

<div style="text-align:right">

s/ Carlos Murguia  
**CARLOS MURGUIA**  
**United States District Judge**

</div>